UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Case: 2:21−cr−20580
Assigned To : Berg, Terrence G.
Referral Judge: Altman, Kimberly G.
Assign. Date : 9/14/2021

UNITED STATES OF AMERICA,

   Plaintiff,

v.

OBIAGELI EZEANYA,

   Defendant.
_____/

Case No:

Hon.

VIO: 18 U.S.C. § 371
   42 U.S.C. § 1320a-7b
   18 U.S.C. § 982

# INFORMATION

THE ACTING UNITED STATES ATTORNEY CHARGES:

## General Allegations

At all times relevant to this Information:

### The Medicare Program

1. The Medicare program was a federal health care program providing benefits to persons who were 65 years of age or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency to beneficiaries who required home health services because of an illness, injury, or medical condition that caused them to be homebound. Payments for home health services under Medicare Part A were typically made directly to a home health agency or provider based on claims submitted to Medicare for qualifying services that were provided to eligible beneficiaries, rather than directly to the beneficiaries.

4. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015.

5. AdvanceMed Corp. ("AdvanceMed") was the Zone Program Integrity Contractor ("ZPIC") for Medicare Part A and Part B in the state of Michigan beginning in May 2015. The ZPIC is the contractor charged with investigating fraud, waste, and abuse.

6. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or

cause to be presented, false and fraudulent claims. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

7. Upon certification, the medical provider, whether a clinic, an HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as an "NPI"). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that medical provider.

8. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and services rendered.

9. Health care providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records

were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

10. Medicare only covered services that were both medically necessary and rendered.

11. Medicare only covered home health services, if, on the claimed dates of service:

   a) The Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

   b) The Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

   c) The HHA must have been approved by Medicare (Medicare-certified); and

   d) The Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

### Federal Anti-Kickback Statute Compliance

12. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions.

Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute (42 U.S.C. § 1320a-7b). Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

### The Home Health Agency

13.  BloomHealth Home Care Services ("Bloom") was a Michigan company doing business at 16250 Northland Drive, Suite 105, Southfield, Michigan 48075. Bloom was a home health agency that purportedly provided in-home skilled nursing, physical therapy, and other services to homebound patients. Bloom was a Medicare provider and submitted claims to Medicare. Bloom maintained an account at Fifth Third Bank ending in x4659 ("Bloom Account").

### Defendant and Related Individuals

14.  Defendant **OBIAGELI EZEANYA**, a resident of West Bloomfield, Michigan, was the sole owner of Bloom. She executed certifications on various dates, including July 7, 2010; June 12, 2012; November 9, 2017; and February 8, 2019 to Medicare affirming that Bloom would comply with all relevant regulations, rules, and statutes, including but not limited to the Federal Anti-Kickback Statute.

15.  Individual 1 was a resident of Wayne County, Michigan, and was a patient recruiter for Bloom.

5

16. Individual 2 was a resident of Wayne County, Michigan, and was a patient recruiter for Bloom.

## COUNT 1
### (18 U.S.C. § 371 — Conspiracy to Pay or Receive Kickbacks)
### OBIAGELI EZEANYA

17. Paragraphs 1 through 16 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

18. From in or around September 2015, and continuing through in or around October 2017, in Oakland County, in the Eastern District of Michigan, and elsewhere, **OBIAGELI EZEANYA** did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Individual 1, Individual 2, and others known and unknown to the United States, to commit certain offenses against the United States, that is,

   a. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by soliciting and receiving any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a

  Federal health care program as defined in Title 18, United States Code, Section 24(b); and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by offering and paying any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

### Purpose of the Conspiracy

19. It was a purpose of the conspiracy for **OBIAGELI EZEANYA** and her co-conspirators to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks in return for Medicare beneficiary referrals; and (2) submitting and causing the submission of claims to Medicare for purported home health services provided to those recruited beneficiaries.

## Manner and Means

20. The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

21. **OBIAGELI EZEANYA** falsely certified to Medicare that Bloom would operate in compliance with all Medicare rules and regulations, and federal laws, including that Bloom would refrain from violating the Federal Anti-Kickback Statute.

22. **OBIAGELI EZEANYA** paid kickbacks, on a per-patient basis, to Individual 1 and Individual 2 in exchange for their recruitment and referral of Medicare beneficiaries to Bloom for home health services.

23. **OBIAGELI EZEANYA** paid Individual 1 at a rate of $600 per episode for each Medicare beneficiary recruited and referred to Bloom for home health services.

24. **OBIAGELI EZEANYA** paid Individual 2 at a rate of $500 per episode for each Medicare beneficiary recruited and referred to Bloom for home health services.

25. **OBIAGELI EZEANYA**, Individual 1, Individual 2, and others did disguise, and attempt to disguise, the nature, source, and receipt of these illegal kickbacks and bribes through sham marketing contracts.

26. **OBIAGELI EZEANYA**, Individual 1, Individual 2, and others submitted and caused the submission of false and fraudulent claims to Medicare, resulting in an improper benefit conferred by Medicare in the amount of approximately $256,515.60 that was obtained through illegal kickbacks.

### Overt Acts

27. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

28. On or about April 7, 2017, **OBIAGELI EZEANYA** wrote a check to Individual 1 from the Bloom Account, in the amount of $1,200, in exchange for the recruitment and referral of two Medicare beneficiaries with the initials B.W. and G.B., where the memo field was annotated with the text, "BW/GB 4/5/17."

29. On or about May 3, 2017, **OBIAGELI EZEANYA** wrote a check to Individual 1 from the Bloom Account, in the amount of $3,000, in exchange for the recruitment and referral of five Medicare beneficiaries, where the memo field was annotated with the text, "CW 120 hrs 4/23/17-4/25/17."

30. On or about April 19, 2017, **OBIAGELI EZEANYA** wrote a check to Individual 2 from the Bloom Account, in the amount of $500, in exchange for the

recruitment and referral of one Medicare beneficiary, where the memo field was annotated with the text, "WC 20 hrs worked."

31. On or about March 26, 2018, **OBIAGELI EZEANYA** wrote a check to Individual 2 from the Bloom Account, in the amount of $500, in exchange for the recruitment and referral of one Medicare beneficiary, where the memo field was annotated with the text, "20hrs 3/26/18."

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7) – Criminal Forfeiture)

32. The allegations contained in this Information are incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

33. As a result of the violation alleged in Count 1 as set forth in this Information, the defendant, **OBIAGELI EZEANYA**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

34. *Money Judgment*: Such property shall also include a forfeiture money judgment against defendant **OBIAGELI EZEANYA** in favor of the United States in amount of at least $249,914.21, representing the total value of all property subject to forfeiture as a result of her violation of Title 18, United States Code, Section 371,

as alleged in Count 1 of this Information.

35. *Substitute Assets*: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek to forfeit any other property of **OBIAGELI EZEANYA** up to the value of such property.

SAIMA S. MOHSIN
Acting United States Attorney

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

ALLAN J. MEDINA
Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

s/Regina R. Mccullough
REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

s/Kathleen C. Cooperstein
KATHLEEN C. COOPERSTEIN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 957-2958
Email: Kathleen.cooperstein@usdoj.gov

Dated: September 13, 2021

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes    ☒ No | **AUSA's Initials:** |

**Case Title:** USA v. Obiageli Ezeanya

**County where offense occurred:** Oakland County

**Check One:**  ☒ Felony  ☐ Misdemeanor  ☐ Petty

    ____Indictment/ ✓ Information --- **no** prior complaint.
    ____Indictment/____Information --- based upon prior complaint [**Case number:**          ]
    ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
|  |  |  |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 13, 2021
Date

s/Kathleen C. Cooperstein

Kathleen C. Cooperstein, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202)-957-2958
Fax:    (313) 226-0816
E-Mail address: Kathleen.Cooperstein@usdoj.gov
Attorney Bar #: VA 84262

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.