UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **OBIAGELI EZEANYA,** Defendant. | **2:21-CR-20580-TGB-KGA-1** **ORDER DETERMINING RESTITUTION AND FORFEITURE AMOUNTS** |

  During Defendant Obiageli Ezeanya's January 12, 2023 sentencing hearing, the Court raised concerns about the appropriateness of restitution and ordered further briefing. ECF No. 31. In particular, the Court asked whether restitution would be "double recovery" if the reimbursed services were actually rendered and medically necessary and would otherwise have been paid for by other Medicare providers. *Id.* at PageID.261–66. More simply, it was unclear whether the government victim—the Department of Health and Human Services ("DHHS") as the administrator of Medicare—had suffered an actual loss that needed to be made whole with restitution.

  Unlike health fraud where a defendant charges Medicare for services that are not rendered or when the beneficiaries are not entitled to them, Ezeanya was convicted of a different kind of crime: conspiracy to pay kickbacks. The defense argued that there were "no patient victims" and "no ineligible patients." *Id.* at PageID.252–53. The government

1

conceded that the plea did not specify that Ezeanya, as the home health care agency administrator, knew that any patients were not entitled to homebound benefits. *Id.* at PageID.258.

## BACKGROUND

Defendant Ezeanya pleaded guilty pursuant to a Rule 11 plea agreement filed on January 18, 2022. ECF No. 19. The Court took the agreement under advisement at the time of the plea and accepted it during the sentencing hearing. ECF No. 31, PageID.250. Ezeanya was convicted of one Count of Conspiracy to Defraud the United States Government and Pay or Receive Kickbacks in violation of 18 U.S.C. § 371. ECF No. 32, PageID.276. The conduct involves the Anti-Kickback Statute, which criminalizes the payment of any funds or benefits designed to encourage patient referrals to a Medicare provider for Medicare-paid services. 42 U.S.C. § 1320a–7b(b). Regarding restitution, the plea agreement states:

> The Court must order restitution to every identifiable victim of the defendant's offense. The parties agree that restitution in the amount of $249,914.21 is due to the Department of Health and Human Services. The Court will make the final determination at sentencing as to who the victims are and the amounts of restitution they are owed.

ECF No. 19, PageID.67. The agreement also includes a forfeiture provision of money judgment of $249,914.21, for which a stipulated order was entered on January 5, 2023. *Id.* at PageID.68–69; ECF No. 30. Parties also noted that:

> Upon entry by the Court of an Order of Restitution as part of the Judgment of Conviction in this criminal case and the judicial forfeiture of any specific assets in this case becoming final, the United States Attorney's Office for the Eastern District of Michigan agrees to prepare a Request for Restoration of Forfeited Assets to Known Victim(s). The Request for Restoration will be submitted to the Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section (MLARS) for determination.

ECF No. 19, PageID.70. Though there is no guarantee, if granted, the funds paid in forfeiture would be restored to the victim as restitution and counted toward the restitution order; thus, the amount forfeited would reduce the amount of restitution owed. *See* ECF No. 35 (under seal), PageID.293 n.2.[1]

## LEGAL STANDARD

Under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A(c), a defendant convicted of fraud must pay restitution to victims of the offense. The government bears the burden of proving the loss amount by a preponderance of the evidence, and the Court must order restitution to each victim in the full amount of each victim's losses. 18

---

[1] If the only known victim is the DHHS/Medicare, then the government appears to be saying that: if MLARS agrees to the request, then the entire forfeiture amount would go toward restitution, thereby ensuring that Ezeanya will pay a single $249,914.21 sum, rather than two. Thus, there would be no double recovery in awarding both restitution and forfeiture. *See e.g., United States v. Taylor*, 582 F.3d 558, 568 (5th Cir. 2009). However, the Court is more concerned that Medicare would receive a windfall because it paid for services that eligible beneficiaries received and would have received anyway from a fully compliant provider (another home health agency not engaged in paying kickbacks).

3

U.S.C. § 3664(e), (f)(1)(A). The Court must find that the defendant's criminal conduct directly and proximately caused the actual or intended loss to the victim. 18 U.S.C. § 3664(h); *United States v. Church*, 731 F.3d 530, 538 (6th Cir. 2013).

A district court "must base its order of restitution on actual losses." *United States v. Riddell*, 328 F. App'x 328, 329 (6th Cir. 2009); *see also United States v. Healy*, 553 F. App'x 560, 567 (6th Cir. 2014) (citing *United States v. Simpson*, 538 F.3d 459, 465–66 (6th Cir. 2008)) ("The restitution calculation can only be based on actual loss.").

## DISCUSSION

At the Court's request, the parties briefed the question of the proper amount of restitution. The government argues that restitution is justified for three reasons: (1) the restitution amount was negotiated and memorialized in the Court-accepted plea agreement, consistent with the MVRA; (2) the offense is a crime of fraud because at least three patients recruited in the conspiracy were not qualified to receive homebound services; and (3) Medicare would not have paid Ezeanya's company anything if it had known about the kickbacks per congressional intention that kickbacks render claims ineligible for payment. ECF No. 35 (under seal). It also pointed to three on-point Eastern District of Michigan judgments where a defendant involved with home health agencies pleaded guilty to the same single count of kickback conspiracy and the restitution order matched what was in the plea agreement. However, as

4

defense counsel raises and the Court's review of these cases confirms, none of these defendants contested the restitution, so those decisions do not address the merits of the issues raised here.

The defense responds that: (1) the Court may order a different amount of restitution from the plea agreement amount if it does not reflect actual loss; (2) restitution must be for actual loss; (3) all relevant services were medically necessary based on Medicare's official definition of "homebound"; (4) restitution must not provide a (punitive) windfall to any victim; and (5) Ezeanya's financial situation and her unemployment/inability to work in the medical field any longer should be taken into account when setting up a payment plan if restitution is ordered. ECF No. 37 (under seal).

In their briefs, parties agree on a few points. They agree that the MVRA applies and requires restitution for an actual loss to a known victim. ECF No. 37, PageID.320 (under seal). But they diverge on whether the government is a victim with an actual loss here and whether certain services were medically necessary. *Id.* They agree that Congress intended that kickback schemes render services ineligible for Medicare reimbursement. *Id.* at PageID.328. But they diverge on its relevance to restitution in this case. *Id.* Both disagreements are interrelated to the question of actual loss: the keystone of restitution.

5

### A. Victim and medical necessity

The victim of Medicare fraud is Medicare itself. But Ezeanya was convicted of conspiracy to pay kickbacks, not of Medicare fraud outright, which requires knowledge and specific intent. In a misdemeanor case involving making false statements to a federal health program, Judge Avern Cohn wrote:

> [I]t is difficult to consider the Medicare Trust Fund a victim because there is no evidence of any actual loss. There is no dispute that defendants performed all of the services for which they received reimbursement. There is no dispute that all of the services performed were medically necessary. There is no assertion of overcharging or hidden fees. In sum, the Medicare Trust Fund would have made the same payments if the defendants had not made any false statements. Without a discrepancy between the amount paid by the Medicare Trust Fund and the value of the services rendered, there can be no actual loss for purposes of the Sentencing Guidelines.

*Cf. United States v. Razalan*, No. 08-20668, 725 F. Supp. 2d 636, 640 (E.D. Mich. 2010) (declining to enter a restitution order). Here, as in *Razalan*, there is no dispute that the services were performed and that there were no overcharging or hidden fees. However, parties argue over whether some were medically necessary—more specifically, whether patients were indeed homebound and eligible for home health services.

### B. Applicability of congressional intent under the Anti-Kickback Statute

While the Court understands that Medicare would not pay a claim out to a provider that it knew was engaged in kickbacks, that alone does

6

not establish an actual loss to Medicare. The Court also acknowledges that any dishonesty financially harms the health-care system as a whole. The government's arguments that in 2010, Congress "added language stating unequivocally that any claim that includes items or services 'resulting from a violation' of the Anti-Kickback Statue 'constitutes a false or fraudulent claim,'" and "[n]o exception was made for kickback claims where honest services were rendered, or kickback claims where beneficiaries were otherwise eligible for those services," is well taken. ECF No. 35, PageID.298.

But to say that paying a kickback is a kind of fraud does not answer the question of whether the agency suffered an actual loss when it paid out claims that were generated as a result of a kickback scheme. For sentencing purposes, the Sixth Circuit rejects calculating loss based solely on false representations to Medicare about a defendant's intent to follow anti-kickback rules. *United States v. Mehmood*, 742 F. App'x 928, 940–41 (6th Cir. 2018). Medicare's conditions of payment to providers are not the type of treatment standard that outright delegitimizes health care services. *United States v. Ricard*, 922 F.3d 639, 658–59 (5th Cir. 2019) (holding that restitution in a Medicare kickback case must be zero where the agency would have paid for the services rendered in the absence of the kickback scheme) (citing *United States v. Mahmood*, 820 F.3d 177, 195 n.12 (5th Cir. 2016) (internal citation omitted)). Therefore,

7

the Court finds that this argument alone fails to establish that all payments to Ezeanya's agency constituted an actual loss.

### C. Calculation

Restitution is a form of relief to make a victim party whole for its losses—no more and no less.

The Court can order an approximation of restitution so long as it relies on reliable evidence. "While the district court need not make specific findings in calculating restitution, the information relied upon by the district court in reaching the final calculation must have 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Fowler*, 819 F.3d 298, 307 (6th Cir. 2016) (citing *United States v. Jackson-Randolph*, 282 F.3d 369, 386 (6th Cir. 2002)). The Court relies on the plea agreement that Ezeanya's agency "was paid in the amount of approximately $249,914.21 for the provision of home health services to Medicare beneficiaries improperly recruited in exchange for kickbacks[]," ECF No. 19, PageID.59. Defendant did not object to this fact during the sentencing hearing. ECF No. 31, PageID.250.

The Court is not convinced that the purported actual loss is supported by a preponderance of the evidence. 18 U.S.C. § 3664(e). The government raises three patients' witness statements as non-exhaustive examples of ineligible beneficiaries. ECF No. 35 (under seal), PageID.296–97. The defense successfully rebutted these because the patients were either eligible for home health services under the Medicare

8

definition of "homebound," which includes individuals who can leave their homes though need help doing so (e.g., a ride from a family member, a cane), or fell outside the September 2015–October 2017 conspiracy timeline. ECF No. 37 (under seal), PageID.324–28.[2]

The government also argues that because Ezeanya had previously denied some of the patients recruited by Rebecca Wells for not being homebound, she could reasonably foresee that Wells would continue to recruit further ineligible patients. ECF No. 35 (under seal), PageID.295–96. The defense does not address this speculative point, and it does not have to.

In the absence of a stipulation of fact by the parties, performing the proper calculation requires fact-finding.[3] "The amount of loss for restitution purposes will not always equal the amount of loss under the Sentencing Guidelines." *United States v. Moran*, 778 F.3d 942, 984 (11th Cir. 2015) (citing *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010)). A defendant may offset the actual loss amount by the value of

---

[2] The Court agrees that expert testimony would better illuminate the fact determinations of medical necessity as counsel are not medical professionals. ECF No. 37 (under seal), PageID.327.

[3] *See e.g., United States v. Terrero*, 571 F. App'x 778, 781–82 (11th Cir. 2014) ("Medical necessity *is* relevant for the determination of the amount of restitution, since restitution is based on actual loss….The district court found as a fact that all but one of the Defendants' treatments were medically unnecessary. The efforts undertaken by the Defendants to circumvent the normal procedures for receiving 'homebound' certification support such a finding.") (emphasis in original) (citations omitted).

services provided to patients, and though that burden initially lies with the government under 18 U.S.C. § 3664(e), it may shift to the defendant. *Ricard*, 922 F.3d at 658.

The government sought to meet its initial burden by pointing to the Anti-Kickback Statute and asserting that Medicare does not pay for services resulting from kickbacks. However, Ezeanya establishes that she is entitled to credit legitimate services when calculating restitution because the services were actually provided and to eligible homebound patients; again, the Court has determined that the three patients the government contends were ineligible for home health services in its brief were properly homebound and eligible. Taking the restitution amount in the plea agreement and deducting the amount that Medicare would have paid had there been no kickback scheme, the actual loss is zero. Therefore, based on the record, the Court will not enter a restitution order.

For the reasons set forth above, the Court does not order restitution from Ezeanya. It also incorporates the January 5, 2023 stipulated order for a personal forfeiture money judgment of $249,914.21. ECF No. 30. An amended judgment will issue.

**SO ORDERED.**

Dated: January 22, 2024   /s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE